UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| SHERMAINE TAYLOR ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:10-cv-9  SNLJ |
| ) | |
| KEVIN SPITZER, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

This matter is before the Court on defendants Kevin Spitzer, Justin Christian, Richard Trout, State of Missouri, Southeast Correctional Center, Michael Kemna, Dwayne Kempker and Omer Clark's Motion for Summary Judgment, #59, filed April 28, 2011.  Plaintiff, through his appointed counsel, has filed a responsive pleading, and this matter is now ripe for disposition.

**I.     Case Summary**

Plaintiff is incarcerated at Southeast Correctional Center in Charleston, Missouri.  He filed this action under 42 U.S.C. § 1983 against the State of Missouri, Southeast Correctional Center ("SECC"), several correctional officers at the SECC, various administrators of the Missouri Department of Corrections and the SECC, claiming that his constitutional rights to be free from cruel and unusual punishment had been violated by the defendants' use of excessive force, failure to supervise, and failure to intervene.[1]  Plaintiff's amended complaint is not separated into counts, nor does plaintiff distinguish which claims apply to which defendants, but the plaintiff has not objected to defense counsel's organization of the claims and defendants.

---

[1] Plaintiff also named as defendants two members of the SECC medical staff, nurse Warren Moore and Dr. Michael Hakala, but those defendants were dismissed on September 29, 2010 (*see* #43).

Plaintiff named eight defendants in this case, including the State of Missouri, the SECC, and six individuals. Defendants Spitzer, Christian, and Trout were corrections officers at SECC at the time relevant to the allegations in plaintiff's complaint. Defendant Clark was SECC's Deputy Warden of Operations. Defendant Kemna was Deputy Director for the Missouri Department of Corrections in Jefferson City, Missouri, and Defendant Kempker was a Deputy Division Director for the Missouri Department of Corrections. Plaintiff seeks monetary relief, but he has abandoned his claim for injunctive relief because he has since been transferred to a different correctional institution. The following facts are undisputed for the purposes of summary judgment, except where indicated.[2]

On August 12, 2009, plaintiff and another inmate got into an argument while showering. Plaintiff believed the other inmate had been looking at him, and the argument continued while plaintiff was being escorted back to his cell by defendant Spitzer. Plaintiff turned his head[3] to continue speaking to the other inmate as plaintiff and Spitzer passed the other inmate's cell, and plaintiff testified that Spitzer "yanked" plaintiff's arm. As Spitzer and plaintiff approached his cell, plaintiff removed his right hand from his handcuffs and displayed it to Spitzer. Plaintiff testified that Spitzer then threw him face-first against a closet door, then Spitzer pulled plaintiff off the wall and "compelled" him toward the other side of the walkway, where a railing was in place. Then Spitzer pushed another corrections officer, who fell, which caused Spitzer and

---

[2]Defendants filed their Statement of Uncontroverted Material Facts on April 28, 2011 (#61). Plaintiff did not respond to defendants' Statements of Facts as required by Local Rule 7-4.01.E by setting forth which of the numbered facts are disputed and citing to the record. Instead, plaintiff filed his own "Statement of Contested Facts" (#69), many of which are actually not contested by the defendants. As required by Local Rule 7-4.01.E, the Court will consider "[a]ll matters set forth in the statement of the movant...admitted for purposes of summary judgment" unless they are "specifically controverted by the" plaintiff.

[3]Plaintiff states in his "Statement of Contested Facts" (#69) that he did not turn toward the other inmate, but plaintiff testified in his deposition that he turned his head.

plaintiff to fall forward. Then, plaintiff says that, as they fell, Spitzer put his arm around plaintiff's neck, choking him. While plaintiff was on the ground, other officers struck him in the head, face, and body, but plaintiff did not know who had struck him. The entire altercation took approximately three minutes[4], and it concluded when correctional officers placed restraints on plaintiff.

Defendant Christian came to the scene from another building after he heard a call for assistance. Defendant Trout also came to the scene from his location approximately 300 yards away after hearing a call for assistance. When they arrived at the scene, plaintiff was on the ground, and several other officers had already arrived. Christian and Trout gained control of plaintiff's legs and helped carry plaintiff to his new cell. Neither Christian nor Trout observed any other corrections officer choke, strike, or apply force inappropriately against plaintiff.

Plaintiff testified that a nurse arrived at plaintiff's cell and cleaned blood off plaintiff's body with medical gauze. Sometime later that morning, plaintiff was escorted to the infirmary, where the prison doctor assessed him. Plaintiff's neck was x-rayed between 10:45 a.m. and 11:00 a.m. A neck brace was placed around plaintiff's neck, and plaintiff was taken to the emergency room, where he was examined for a possible broken neck. Plaintiff's neck was not actually broken, though it was determined that he suffered from trauma to his neck. Plaintiff was temporarily placed in the infirmary for closer observation.

## II.     Legal Standard

---

[4]Plaintiff estimated that the altercation lasted from one to ten minutes. Defendants state that the altercation lasted three minutes based on the prison's surveillance video footage. The video footage does support that the altercation lasted approximately three minutes; however, the video footage is otherwise unhelpful, as the events at issue take place far from the camera and behind a large pole.

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. *New England Mut. Life Ins. Co. v. Null*, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." *Mt. Pleasant v. Associated Elec. Coop. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988).

Pursuant to Federal Rule of Civil Procedure 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *Mt. Pleasant*, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976). With these principles in mind, the Court turns to the discussion.

**III. Discussion**

4

Plaintiff claims that his constitutional right to be free from cruel and unusual punishment was violated by the defendants' use of excessive force, failure to supervise, and failure to intervene. Defendants seek summary judgment on each claim, and each will be discussed in turn below.

### A. Claims against the State of Missouri, SECC, and individuals in their official capacities.

As an initial matter, the Court will grant summary judgment to the State of Missouri and SECC because the State of Missouri is not a person under § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). It is also well settled that the Eleventh Amendment bars claims against the State of Missouri and its agencies in Federal Court. *Quern v. Jordan*, 440 U.S. 332, 337 (1979); *Murphy v. State of Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997). Similarly, a suit against state officials in their official rather than individual capacities is again an impermissible suit against a state. *Will*, 491 U.S. at 71. As such, the Court will grant summary judgment to defendants with regard to plaintiff's claims against Missouri, SECC, and the defendants in their official capacities.

### B. Excessive Force

The Eighth Amendment bars correctional officers from imposing unnecessary and wanton pain on inmates. Officers may reasonably use force in a good faith effort to maintain or restore discipline but may not apply force maliciously or sadistically to cause harm. *Johnson v. Blaukat*, 453 F.3d 1108, 1112 (8th Cir. 2006). "A supervisor cannot be held liable, on a theory of respondeat superior, for an employee's unconstitutional actions. Rather, a supervisor incurs liability for an Eighth Amendment violation when the supervisor is personally involved in the violation or when the supervisor's corrective inaction constitutes deliberate indifference toward

5

the violation." *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (internal citations and footnote omitted).

### 1. Defendants Clark, Kemna, and Kempker

As to the six individual defendants, three (Spitzer, Christian, and Trout) were in some way involved in the incident at issue in this case, and the other three administrative-level defendants (Clark, Kemna, and Kempker) were not remotely involved in the incident at issue in this case. Supervisors — to the extent these defendants can even be considered supervisors — must be personally involved in the violation, or they must "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he or she] might see." *Id.* (quoting *Ripson v. Alles*, 21 F.3d 805, 809 (8th Cir.1994) (internal quotation omitted)). No such personal involvement or knowledge and approval exists here. Furthermore, the plaintiff does not make any arguments against granting summary judgment to Clark, Kemna, and Kempker.[5] As a result, summary judgment will be granted to defendants Clark, Kemna, and Kempker on the excessive force claim.

### 2. Defendants Christian and Trout

Defendants Christian and Trout arrived on the scene of the altercation after plaintiff was on the ground, and just before plaintiff was put into restraints and carried to his new cell. Plaintiff does not contest that neither Christian nor Trout applied any force other than what was necessary to gain control of plaintiff's legs, carry plaintiff to his cell, and remove plaintiff's restraints. Plaintiff states in his statement of contested facts that he does not know whether Christian or Trout applied any force. As set out above, the nonmoving party bears the burden of

---

[5]It appears that plaintiff is not making excessive force claims against Clark, Kemna, and Kempker at all. Plaintiff begins the Excessive Force section of his brief with "The claim of whether Officer Spitzer, Officer Christian, and Officer Trout used excessive force is an issue for the trier of fact"; the other three defendants are not mentioned at all with respect to that claim.

setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex Corp.*, 477 U.S. at 324.  Here, plaintiff has not done so, as he has presented no facts to support that a jury could find either defendant used excessive force.  Indeed, the Eighth Circuit has held that even shoves and tight application of handcuffs in the course of subduing a person could not be found to be excessive force by a reasonable jury.  *Crumley v. City of St. Paul, Minn.*, 324 F.3d 1003, 1008 (8th Cir. 2003).  Here, it appears that Christian and Trout employed even milder use of force.  Summary judgment will therefore be granted to defendants Christian and Trout on plaintiff's excessive force claim.

       **3.**     **Defendant Spitzer**

Plaintiff's memorandum in opposition focuses almost exclusively on defendant Spitzer with regard to his excessive force claim.  He cites to the Eighth Circuit's articulation of five factors relevant to determining whether a prison official used force in a good-faith effort to maintain or restore discipline, or whether the force was used maliciously and sadistically.  Those factors are (1) the threat the officials reasonably perceived, (2) the need for the use of force, (3) the efforts made to minimize the force used, (4) the relationship between the need for using force and the amount of force used, and (5) the degree of injury inflicted.  *Howard v. Barnett*, 21 F.3d 868, 871 (8th Cir. 1994).

Plaintiff admits that he removed his right hand from the handcuffs and that those handcuffs could be used as a weapon.  Plaintiff further admits that, at the time he removed his hand from the handcuffs, he had been arguing with another inmate and was irritated that he perceived defendant Spitzer to have inappropriately "yanked" his arm.  Plaintiff admits that he tried to remove Spitzer's arm from around his neck during the altercation.  Thus, it is clear that defendant Spitzer reasonably perceived plaintiff as a threat: plaintiff was angry with another inmate, plaintiff was irritated with Spitzer, and plaintiff was demonstrating to Spitzer that he was

7

unrestrained.  Furthermore, plaintiff's resistance at being subdued — although it may have been entirely natural — nonetheless constituted resistence.  As the Eighth Circuit has observed, even such "entirely natural" resistance "may justify the use of greater force."  *Crumley*, 324 F.3d at 1008.  Even viewed in a light most favorable to plaintiff, it is clear that plaintiff posed a threat to defendant Spitzer.

Plaintiff suggests that the severity of his injuries — which included some scrapes, bloody nose, temporary problems with vision, and trauma to plaintiff's neck — suffice to show that defendant Spitzer used excessive force.  Defendants, citing to *McVay v. Sisters of Mercy Health*, 399 F.3d 904 (8th Cir. 2005), counter that the injuries sustained by plaintiff do not indicate that the level of force used was excessive.  In *McVay*, the defendant police officer tackled a disoriented hospital patient who was trying to leave the hospital after being placed under arrest.  The defendant tackled the patient and they both fell to the floor, where plaintiff hit his head and later died from his injuries.  In the § 1983 lawsuit that ensued, the Eighth Circuit rejected a "20/20 hindsight analysis" that the force used was excessive because it resulted in the patient's death, holding that "the result . . . cannot transform the actions [defendant] took under the circumstances into an actionable claim."  *Id.* at 908.  This Court, however, is also mindful that it must look to the injuries suffered by plaintiff under the five-factor *Howard* analysis.  *Howard*, 21 F.3d at 871.  Plaintiff suffered a bloody nose and a sore neck and possibly some vision problems after the altercation.  Plaintiff admits that — when he was pushed to the wall or to the ground — that the impacts were not severe.  The vision problems and neck trauma suggest that he incurred those injuries as a result of being placed in a choke hold by defendant Spitzer.  Plaintiff admits that he tried to remove Spitzer's arm from around his neck, and he does not contest that Spitzer released him from the choke hold after plaintiff had been restrained.  The facts indicate that defendant Spitzer's use of force — particularly in light of plaintiff's admittedly agitated

demeanor, plaintiff's removal of his handcuffs, and the fact that Spitzer released plaintiff after plaintiff had been restrained — was not excessive, and it was certainly neither malicious nor sadistic.  *See Howard*, 21 F.3d at 872 (defining malicious as "without just cause or reason, a course of action intended to injure another," and sadistic as "engaging in extreme ore excessive cruelty or by delighting in cruelty).  As a result, plaintiff's excessive force claim against defendant Spitzer fails.

>   C.   **Failure to Supervise**

Plaintiff states defendants Christian and Trout "turned a blind eye to Taylor's substantial injuries and the harm done to Mr. Taylor when they arrived on the scene if they did not participate int eh battery of Mr. Taylor themselves."  However, plaintiff does not contest that neither Christian nor Trout observed anyone choke, punch, kick, or strike the plaintiff.  Plaintiff admits Christian and Trout arrived on the scene after plaintiff was on the ground.  Thus, even if a violation of plaintiff's rights had occurred, neither defendant was there to turn a blind eye to it.  As explained above, to be liable, supervisors must be personally involved in the violation, or they must "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he or she] might see." *Boyd*, 47 F.3d at 968.  It is clear that neither is true here, and summary judgment will be granted to defendants Christian and Trout on this claim.

As for defendants Warden Clark, Director Kemna, and Deputy Director Kempker, plaintiff says that they also "turned a blind eye to the matter in that they failed to adequately train or have others train Spitzer in the proper handcuffing procedures."  Plaintiff has not made a failure to train claim in this case, and even if he had, there is no evidence in the record regarding training provided to Spitzer.  Finally, because there must be an underlying constitutional violation for a failure to supervise claim to lie, and no such violation occurred here, so none of

9

these "supervisors" cannot be held liable. *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 673 (8th Cir. 2007).

### D. Failure to Intervene

Plaintiff's failure to intervene claim fails for the same reasons his failure to supervise claim fails. To prove his failure to intervene claim, plaintiff must show that a corrections officer used excessive force, that the other officers had knowledge of that excessive force, and that the other officers had a reasonable opportunity to intervene to prevent the use of excessive force. *Putnam v. Gerloff*, 639 F.2d 415, 423 (8th Cir. 1981). The only defendants to whom this claim could apply are defendants Christian and Trout. It is uncontradicted that both arrived on the scene well after plaintiff was already on the ground, and neither saw any correctional officer kick, choke, or hit plaintiff. Thus, even if Spitzer or other (unnamed) correctional officers had used excessive force, there is no question of fact as to whether Christian or Trout had any *opportunity* to intervene to prevent use of that force. As a result, summary judgment shall be granted to defendants Christian and Trout on this claim.

### IV. Conclusion

Summary judgment shall be granted to all remaining defendants on all remaining claims. No issue remains for trial in this case.

Dated this   18th   day of November, 2011.

_____
UNITED STATES DISTRICT JUDGE